## S09G1254. THE STATE v. BURKE.
(695 SE2d 649)

MELTON, Justice.

Following a jury trial, Sean Burke was found guilty of aggravated stalking based on a single contact that he made with Elaine Bolton in violation of an earlier protective order. The Court of Appeals reversed Burke's conviction, finding that, because the State's entire prosecution was based on a single violation of the protective order, and because a single violation of a protective order does not, in and of itself, establish a pattern of harassing and intimidating conduct, the State had not proven that Burke was guilty of aggravated stalking. See *Burke v. State*, 297 Ga. App. 38 (676 SE2d 766) (2009). This Court granted certiorari in this case to determine whether the Court of Appeals erred in reversing the judgment of the trial court. For the reasons that follow, we affirm.

The record reveals that, after the relationship between Burke and Bolton ended in 2001, Burke continued to contact and follow Bolton over the course of the next two years. On August 27, 2003, Bolton obtained a temporary protective order in an attempt to prevent Burke from stalking her. After a September 10, 2003 evidentiary hearing, the trial court entered a twelve-month stalking protective order that contained an express ''no contact'' provision. While Burke stayed physically away from Bolton after this, he mailed her over fifty letters. Burke was arrested, and while he was in jail and awaiting trial, he called and mailed letters and gifts to Bolton. Burke pleaded guilty to one count of stalking and two counts of aggravated stalking. He was sentenced to ten years (with thirty months to serve), and the trial court issued a permanent protective order, which expressly prohibited Burke from having ''any contact whatsoever of any nature'' with Bolton.

Approximately fifteen months later, Burke contacted Bolton by sending her an envelope containing a card, a letter, and a handwritten poem. Burke was then indicted and tried for the one count of aggravated stalking at issue in this case. In connection with the trial on this particular count of aggravated stalking, however, the State specifically argued that it only had to prove Burke's single violation of the permanent protective order in order for the jury to find him guilty of the crime charged. Moreover, the jury was specifically instructed that the evidence of prior difficulties between Burke and Bolton that had been presented at the trial could only be considered

for the limited purpose of illustrating "the state of feeling between the defendant and the alleged victim and the bent of mind and the course of conduct on the part of the accused" and "*not* . . . for any other purpose." See, e.g., *O'Toole v. State*, 258 Ga. 614, 617 (6) (373 SE2d 12) (1988) (evidence of prior difficulties is admissible "for a limited purpose on the question of the defendant's conduct, bent of mind, motive, scheme, purpose, or intent to commit the crime with which he was charged"). Thus, the evidence of prior difficulties could not be considered as evidence of a pattern of behavior by Burke toward Bolton that would support the "pattern" element of aggravated stalking, and the State's entire case hinged on the theory that a single violation of a protective order, in and of itself, was sufficient to establish the crime of aggravated stalking.

Pursuant to OCGA § 16-5-91 (a),

> [a] person commits the offense of aggravated stalking when such person, in violation of a . . . permanent protective order, . . . follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person.

Although the aggravated stalking statute does not define the term "harassing and intimidating," the simple stalking statute does. See OCGA § 16-5-90 (a) (1). The definition contained in the simple stalking statute is applicable here, because the legislature has made clear that the simple stalking statute defines "harassing and intimidating" "[f]or purposes of [the entire] article [on stalking in the Georgia Code]." Id. In this regard,

> the term "harassing and intimidating" means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety . . . by establishing a *pattern* of harassing and intimidating behavior, and which serves no legitimate purpose.

(Emphasis supplied.) Id.

Based on the plain terms of the stalking statutes, a single violation of a protective order, by itself, does not amount to aggravated stalking.[1] The contact with the victim in violation of the protective order must also be "without the consent of the other

---

[1] It bears noting that the existence of a protective order, in and of itself, does not necessarily connote that the court that entered the order has made a finding that prohibited

person for the purpose of harassing and intimidating" him or her. OCGA § 16-5-91 (a). The "harassing and intimidating" conduct must be established by, among other things, "a *pattern* of harassing and intimidating behavior." (Emphasis supplied.) Id. A single violation of a protective order, alone, simply does not establish "a pattern of harassing and intimidating behavior." Id. See also *Daker v. Williams*, 279 Ga. 782, 785 (621 SE2d 449) (2005) ("*[T]wo* related instances of stalking behavior . . . occurring within the space of a single week . . . evinced a pattern of prohibited behavior criminalized by the [stalking] statutes") (emphasis supplied). Nor does the mere existence of a protective order obviate the State's need to establish every element of the offense of aggravated stalking where one of the required elements that the State must prove is that a "pattern" of behavior exists. See *Daker*, supra. Indeed, despite the fact that the State proved the other elements of aggravated stalking in this case, by pursuing a strategy that eliminated any basis for establishing a "pattern" of harassing and intimidating behavior, the State could not prove an essential element of its case against Burke. See OCGA §§ 16-5-90 (a) (1) and 16-5-91 (a). We therefore agree with the Court of Appeals that, under the facts of this case, the defendant's conviction cannot stand.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 28, 2010.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Assistant District Attorney*, for appellant.
*Willis & Quinn, William G. Quinn III*, for appellee.

---

contact has already taken place. In fact, protective orders can be entered ex parte as a preventive measure before more serious problems arise, and do not require a finding, beyond a reasonable doubt, that prohibited contact has actually taken place.