**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 15, 2026**

# In the Court of Appeals of Georgia

A25A2128. TUCKER v. THE STATE.

DOYLE, Presiding Judge.

Following a jury trial, Leroy Tucker was convicted of aggravated stalking,[1] family violence battery,[2] and third degree cruelty to children.[3] He now appeals the denial of his motion for new trial, contending that (1) the evidence was insufficient to support the guilty verdict as to aggravated stalking, and (2) the trial court abused its discretion by failing to set aside the verdict on the general grounds under OCGA §§ 5-5-20 and 5-5-21. We disagree and affirm.

---

[1] OCGA § 16-5-91(a).

[2] OCGA § 16-5-23.1(f)(2).

[3] OCGA § 16-5-70(d)(2).

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 US 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979), and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.

*Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004) (citations omitted).

So viewed, the evidence shows that Tucker began dating N. G. in 2017, and he moved into N. G.'s house the next year. The relationship eventually soured, with conflict arising over the fact that N. G. was still communicating with her ex-husband, the father of one of her minor children. In June 2021, N. G. obtained a 12-month family violence temporary protective order ("TPO"), based on Tucker's commission of an act of family violence. The TPO granted N. G. sole possession of her residence, prohibited Tucker from "harassing, harming, or abusing" N. G., and barred him from directly or indirectly contacting N. G. or approaching within 200 yards of N. G. or her children. The order was in effect until June 2022.

In May 2022, N. G. was home with her 12-year-old son and his friend. Despite not being invited, Tucker appeared at the house, and N. G. confronted him about why he was there. An argument ensued, and Tucker struck N. G. with his hands and threw an object at her. In the process, Tucker injured N. G.'s lip and eye. N. G.'s son was nearby and called 911. Police responded and took a statement from N. G. as well as photographs of her injuries; Tucker fled but was apprehended at a later date.

Based on these events, Tucker was charged with aggravated stalking, family violence battery, and cruelty to children in the third degree. Following a trial in which N. G. testified, a jury found Tucker guilty on each count. He moved for a new trial, which motion was denied, and he now appeals.

1. Tucker contends that the trial court erred by denying his motion for new trial because the evidence was insufficient to support the guilty verdict as to the aggravated stalking count. Specifically, he argues that the State failed to prove that he engaged in a pattern of harassing and intimidating behavior as required to prove that offense. We disagree.

Under OCGA § 16-5-91, "[a] person commits the offense of aggravated stalking when such person, in violation of a . . . temporary protective order . . . contacts

another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person." Thus,

> the State was required to prove that a protective order prohibited [Tucker] from having contact with the victim, that [Tucker] violated the protective order by contacting her without her consent, and that he contacted her for the purpose of harassing and intimidating her. To prove an act was done for the purpose of harassing and intimidating, the State must show that it was part of a pattern of harassing and intimidating behavior.

*Herbert v. State*, 311 Ga. App. 396, 398 (715 SE2d 795) (2011) (citation and punctuation omitted).

Tucker relies on *State v. Burke*, 287 Ga. 377 (695 SE2d 649) (2010), which held that, with respect to the pattern of harassing and intimidating behavior, "[a] single violation of a protective order, alone, simply does not establish [such] a pattern . . . ." Id. at 379. Based on this, Tucker argues that the State failed to prove a pattern of harassing and intimidating behavior because the May 2022 violation of the TPO could not alone establish the pattern.

This argument is unavailing here because of the very narrow facts in *Burke*. In that case, Burke had engaged in an obvious pattern of harassing contact prohibited by

a TPO by mailing the victim more than 50 letters while he was prohibited from any contact with her prior to the offense at issue on appeal. See id at 377. He pleaded guilty to stalking and aggravated stalking, and the trial court entered a permanent protective order prohibiting any contact whatsoever. See id. Fifteen months later, Burke mailed the victim a letter and poem, which resulted in a second conviction for aggravated stalking at issue in that appeal. During the trial on that particular count,

> the State specifically argued that it only had to prove Burke's single violation of the permanent protective order in order for the jury to find him guilty of the crime charged. Moreover, the jury was specifically instructed that the evidence of prior difficulties between Burke and Bolton that had been presented at the trial could only be considered for the limited purpose of illustrating "the state of feeling between the defendant and the alleged victim and the bent of mind and the course of conduct on the part of the accused" and "not . . . for any other purpose." Thus, the evidence of prior difficulties could not be considered as evidence of a pattern of behavior by Burke toward [the victim] that would support the "pattern" element of aggravated stalking, and the State's entire case hinged on the theory that a single violation of a protective order, in and of itself, was sufficient to establish the crime of aggravated stalking.

Id. at 377-378 (citation omitted). Based on this, the Supreme Court held that the single violation of the permanent protective order was not enough to establish a pattern of

harassing and intimidating conduct without any other supporting evidence. See id. at 379.

Nevertheless, in light of *Burke's* narrowness, later cases have explained that a single violation of a protective order can prove an aggravated stalking offense if it is combined with other evidence not available in *Burke*. See, e.g., *Oliver v. State*, 325 Ga. App. 649, 652 n. 10 (1) (753 SE2d 468) (2014) (noting "the 'unique circumstances' at issue in *Burke*"); *Louisyr v. State*, 307 Ga. App. 724, 729 (1) (706 SE2d 114) (2011) ("Although *Burke* requires a pattern of behavior, nothing in that opinion suggests that multiple violations of a protective order are required."). Thus, "to determine whether the evidence shows a pattern of harassing and intimidating behavior, the jury can consider a number of factors, including the prior history between the parties . . . as well as his overtly confrontational acts . . ." *Herbert*, 311 Ga. App. at 399(quoting *Louisyr*, 307 Ga. App. at 729 (1) (punctuation omitted)).

Here, there was evidence properly before the jury that Tucker had engaged in escalating conflict with N. G. before the protective order was issued. N. G. explained that in the time leading up to the 2021 TPO, she and Tucker argued over her contact with her son's father, which stemmed from Tucker's suspicions that she "still [had]

something going on." And as the trial court referenced in its order, it is undisputed that Tucker engaged in "an incident of violence" resulting in the grant of the TPO. The jury was authorized to consider these prior difficulties culminating in an act of violence by Tucker against N. G. when it determined whether Tucker's May 2022 uninvited appearance at her residence, in violation of the TPO and leading to more violence against N. G., was part of a pattern of harassing or intimidating conduct. When this evidence is viewed under the appropriate standard, see *Jackson v. Virginia*, 443 US 307, 319 (III)(B), it authorized a rational trier of fact to find that Tucker's uninvited violent confrontation at N. G.'s residence was a part of a pattern of intimidating conduct. See *Herbert*, 311 Ga. App. at 399 n.4 (noting (1) that the defendant's course of conduct during an uninvited, threatening, and violent contact amounted to a pattern, and (2) concluding that, based on other previous behavior, "the jury was authorized to find [the defendant] guilty of aggravated stalking based on his violation of the protective order and his extensive history of harassing and intimidating the victim."). Therefore, Tucker's challenge to the sufficiency of the evidence is without merit.

2. Tucker also contends that the trial court abused its discretion by denying his motion for new trial on the general grounds, which authorize a trial court to grant a new trial if the verdict is "contrary to evidence and the principles of justice and equity," OCGA § 5-5-20, or "decidedly and strongly against the weight of the evidence . . ." OCGA § 5-5-21.

> But the merits of the trial court's decision on the general grounds are not subject to our review, and the decision to grant a new trial on the general grounds is vested solely in the trial court. In the order denying [Tucker's] motion for new trial, the trial court concluded that the evidence was sufficient beyond a reasonable doubt to find [Tucker] guilty of the charges against him and that the weight of the evidence supported the verdict. The trial court also concluded that, [after reviewing the evidence and the credibility of the witnesses as the 13th juror, the motion should be denied.] Absent affirmative evidence to the contrary — and there is none here — we presume that the trial court properly exercised its discretion in denying a motion for new trial on the general grounds. Accordingly, [Tucker's] claim is not subject to review on appeal.

*Saunders v. State*, ___ Ga. ___ (2025), Case No. S25A1091, slip op. at 13-14 (Ga. Dec. 9, 2025) (citations and punctuation omitted).

*Judgment affirmed. Markle and Padgett, JJ., concur.*